IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

**HAROLD T. HERVEY**                                                   **PLAINTIFF**

**V.**                                              **CIVIL ACTION NO.2:09CV165-SAA**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF SOCIAL SECURITY**                       **DEFENDANT**

## MEMORANDUM OPINION

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Harold T. Hervey, for a period of disability (POD) and disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act and for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act. Because both parties have consented to have a magistrate judge conduct all the proceedings in this case in accordance with the provisions of 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

Plaintiff applied for benefits on August 16, 2006, alleging that he became disabled July 1, 2006 due to gout and resulting pain in his ankles and legs, as well as hypertension and headaches. Tr. 12, 16-17, 144 - 145. The plaintiff's claims were denied initially and on reconsideration. Plaintiff requested an administrative hearing, which was held on August 20, 2008. On

September 19, 2008, the ALJ issued an unfavorable decision, and plaintiff filed a request for review with the Appeals Council. On July 21, 2009, the Appeals Council denied plaintiff's request for review. Plaintiff timely filed this appeal that is ripe for review.

**FACTS**

The plaintiff was born January 11, 1973 and was thirty-five years old at the time of his hearing before the ALJ, making him a "younger individual" for purposes of determination of benefits.. He completed high school and one semester of college. Tr. 6, 25. His past relevant work was as a direct care worker, short order cook, restaurant manager and press operator. Tr. 44.

The ALJ determined that the plaintiff suffers from "severe" impairments, including gout, hypertension, and headaches (Tr. 12), but that these impairments, either singly or in combination, do not meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. Tr. 14. The ALJ found that the plaintiff retains the Residual Functional Capacity (RFC) to

> occasionally and frequently lift/carry up to 10 pounds, stand/walk for up to two hours in an eight-hour workday; sit for a total of six hours in an eight-hour workday. The claimant should never climb, kneel or crawl, but can occasionally stoop or crouch. The claimant would also be limited to jobs that allow him to alternate sitting and standing as needed, as needed. [sic]. Secondary to chronic pain and allegations of headaches, the claimant would be limited to jobs that do not demand attention to details or complicated job tasks/instructions.

Tr. 15. Upon further analysis under applicable rulings and regulations, the ALJ determined that the plaintiff was less than fully credible in that his claimed symptoms, stated limitations and subjective complaints are inconsistent with the medical evidence. Tr. 16. After evaluating all of the evidence in the record, including testimony of both the plaintiff and a vocational expert (VE) at the hearing, the ALJ held that the plaintiff is unable to perform his past relevant work. Tr. 17.

Nevertheless, considering plaintiff's age, education, work experience and RFC, and using the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2, as a framework, the ALJ determined that because there are jobs that exist in significant numbers in the national economy that the plaintiff can perform, he is not disabled under the Social Security Act. Tr. 17-18.

On appeal to this court "plaintiff concedes that his impairments do not meet a listing" "[n]or does he "grid" so as to obtain benefits." Docket 7, p. 7. Instead, plaintiff argues that his gout is episodic, yet severe, and would cause him to miss four or more days of work a month. *Id.* According to plaintiff, such absenteeism would make him unable to perform any job and thus eligible for benefits. *Id.* Further, the plaintiff alleges that the ALJ failed to give proper weight to the opinion of treating physician Dr. Glasgow, "selectively read" the record and simply did not "understand" gout as an impairment. *Id* at 8. In sum, the plaintiff contends that his impairments, in combination, would cause him to have excessive absenteeism, making him unable to maintain any employment, and if the ALJ had afforded controlling weight to Dr. Glasgow's opinions, he would have found plaintiff disabled under the meaning of the act.

## STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[1] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[2]

---

[1] *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

[2] *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991).

First, plaintiff must prove he is not currently engaged in substantial gainful activity.[3] Second, the plaintiff must prove his impairment is "severe" in that it "significantly limits his physical or mental ability to do basic work activities . . . ."[4] At step three the ALJ must conclude the plaintiff is disabled if he proves that his impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2003).[5] If plaintiff does not meet this burden, at step four he must prove that he is incapable of meeting the physical and mental demands of his past relevant work.[6] At step five the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that he is capable of performing other work.[7] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that he cannot, in fact, perform that work.[8]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence, and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as

---

[3] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2003).

[4] 20 C.F.R. §§ 404.1520, 416.920 (2003).

[5] 20 C.F.R. § 404.1520(d), 416.920 (2003). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. §§ 404.1525, 416.925 (2003).

[6] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2003).

[7] 20 C.F.R §§ 404.1520(f)(1), 416.920(f)(1) (2003).

[8] *Muse*, 925 F.2d at 789.

adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971)).

The ALJ concluded at step three that although plaintiff had severe impairments, they did not meet or equal any impairment listed at 20 CFR pt. 404, subpt. P, app. 1 (2008), including Listing 1.01 for musculoskeletal impairments, or Listing 14.09, Inflammatory arthritis, Listing 4.02 or 4.04 relating to plaintiff's hypertension and cardiovascular impairments, or any of the Listings 11.00, et seq., relating to plaintiff's headaches or neurological disorders. Tr. 14 - 15. The plaintiff's argument focuses on the ALJ's did not afford controlling weight to the opinions of plaintiff's treating physician Dr. Thomas Glasgow. Tr. 13.

## DISCUSSION

### Substantial Evidence

Substantial evidence, says the Fifth Circuit, is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

In its entirety plaintiff's medical chart in evidence from Dr. Glasgow consists of only eleven pages from plaintiff's chart, showing only a single office visit by plaintiff – in November 2004. Six of these eleven pages are Lab Reports. There are also a one-paragraph letter from Dr. Glasgow dated March 9, 2007, stating in part, "I believe that due to his chronic gout condition, he is disabled and will not be able to return to work," a three-page medical source statement dated August 12, 2008, and single handwritten, unsigned, undated and otherwise unidentified page that purports to be a medical questionnaire. Tr. 232 - 243, 276 - 279.

At the August 20, 2008 hearing, the plaintiff admitted that he was unable to actually "see" Dr. Glasgow as much as he had in the past[9] for financial reasons. Tr. 33. Nevertheless, plaintiff has provided no evidence, other than his own testimony, of any additional examinations or office visits with Dr. Glasgow besides the one documented visit in November 2004, some seven months prior to plaintiff's alleged onset date. Furthermore, although plaintiff's counsel represents – incorrectly – that Glasgow diagnosed certain conditions, the medical record itself makes clear that these notes were strictly *history taken from the patient* during his examination. Plaintiff's counsel also asserts that there is no medical evidence to contradict plaintiff's testimony regarding his conditions, their frequency and duration;[10] nevertheless there is clear evidence of inconsistencies, contradictions and complete falsehoods that led the ALJ to find the plaintiff less than credible. The court has reviewed the ALJ's findings and concurs with his decision.

---

[9] There are no medical records of previous visits to Dr. Glasgow.

[10] An immaterial argument, in the court's view, because that evidence was dismissed as incredible. Counsel would convert the duty of an ALJ to see that a claimant's record is complete, 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3), into an obligation to not only act as an advocate for a claimant, but to unearth evidence of disability when plaintiff otherwise has put forth no credible reason to believe that such evidence exists. *See also* SSR 96-5p; SOC SEC LP § 52:23.

As noted, based on the evidence, Dr. Glasgow only saw plaintiff once.[11] On that occasion plaintiff's chief complaint was he needed his blood pressure rechecked. Tr. 233. Dr. Glasgow ordered a general battery of tests and asked plaintiff return in 3 months. Tr. 236. There are no records indicating that plaintiff ever returned. The ALJ gave little weight to Dr. Glasgow's opinion because (1) a single office visit fails to establish a relationship as a treating source, (2) the doctor's determination that plaintiff was likely disabled was an inappropriate legal rather than medical conclusion, and (3) his treatment notes were not consistent with the record as a whole. Tr. 13.

Social Security regulations provide that at step three of the sequential evaluation process *the plaintiff* must prove by objective medical evidence that his impairment, either singly or in combination with other impairments, meets the stringent requirements set out in the listings. *Selders v. Sullivan*, 914 F.2d 614, 617, 619 (5th Cir. 1990), citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990); 20 C.F.R. §404.1526(a). Although a social security hearing is not an adversarial proceeding, the plaintiff claimant bears the burden of showing medical findings that he meets each element of the listing. *Id.* A physician who has seen a plaintiff once is no more familiar with the plaintiff's medical history than any other physician, and there is no treatment history or other relationship that would require an ALJ to afford more weight to that physician's opinions. *Hernandez v. Heckler*, 704 F.2d 857, 860-61 (5th Cir. 1983); *see also Taylor v. Astrue*, 245 Fed. Appx. 387, 391 (5th Cir. 2007) ("The ALJ did not need to accept [claimant's] assertion that Weisberg was her treating physician at face value, given the limited

---

[11]Although plaintiff states in his brief that "other records do exist and will be presented at hearing or in plaintiff's reply brief." No additional records from Dr. Glasgow have been submitted.

treatment relationship she established with him.").

Plaintiff contends that the ALJ committed clear error in declining to credit the opinion of Dr. Glasgow. The ALJ chose instead to give controlling weight to the opinions of consultative examining physician Dr. Terry Kent Ellis. Tr. 13. Reading the record as a whole, the court concludes that the ALJ's opinion is supported by substantial evidence and should be affirmed.

## Selective reading of the medical evidence or improper "understanding" of the impairment

As an initial matter, the court's function in reviewing a decision of the of the Commissioner is limited to determining whether the record, considered as whole, contains substantial evidence that supports final decision of the Commissioner as a trier of fact. This court may not reweigh evidence or retry issues de novo or substitute its judgment for that of the Commissioner. The court's inquiry is whether the record as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales,* 402 U.S. 389, 401(1971); *Lindsey v. Commissioner of Social Sec.* (Civil Action No. 3:09cv57-SAA) 2010 WL 2605840, 6 -7 (N.D.Miss.,2010) (plaintiff represented by Mr. Guernsey and Mr. Reynolds).

The court has admonished plaintiff's counsel in the past that it may not and will not consider evidence that is not contained within the administrative record. Therefore the court will not consider any argument from counsel that cites "an article found at the 'Google Health' website, authored by A.D.A.M., author of web-based Health Solutions for employers, health consumers, and medical professionals." Docket 7, p.14. Neither the ALJ, the court nor counsel is at liberty to rely on "evidence" not in the record, much less counsel's speculation, conjecture,

wishful thinking or counsel's own personal experience with a particular impairment. "Social Security is not a handout; it is not charity; it is not relief. It is an earned right based upon the contributions and earnings of the individual." 102 Cong. Rec. 15110. Though certainly sympathetic to persons with disabling conditions, the court cautions counsel that preposterous arguments,[12] unreasonable interpretations of record evidence or attempts to rely upon external sources not in the record may be grounds for sanctions in the future. Future briefs incorporating such references or any arguments not well grounded in the actual appeal record or the law may result in monetary sanctions imposed against counsel correlating directly to the court's wasted time.

Second, the court further admonishes plaintiff's counsel to be mindful that he is an officer of the court. He is bound by the Mississippi Rules of Professional conduct, which require lawyers not bring any proceeding that is not well grounded in law and fact and further require that counsel maintain the integrity of the profession, including not making comments against the integrity or competency of a judicial officer. Mr. Guernsey has often gratuitously slighted the ALJ, not only the ALJ in this case, but numerous other ALJs in other cases, with "observations"

---

[12]For example, counsel argues that:
. . . when discussing different listings, (tr. 13 - 15), the kidney problems called 'renal insufficiency' at (tr. 252), are certainly evidence of end-organ damage. Similarly, vision problems themselves constitute 'end organ damage.'"
    As to other unmentioned impairments: asthma or allergies, (tr. 37), would cause occasional <u>additional</u> absences from work. Obesity certainly aggravates gout and hypertension, as well as (currently) minimal heart problems (tr. 274-75); chest pain (tr. 253, et seq.), would certainly cause additional absences as would situational depression.

Docket 7, p. 15. It should not be required that the court actually articulate that counsel's imagination cannot reasonably form the basis for an ALJ chasing remote possibilities for every person who files a claim with the Social Security Administration. *See Smith v. Astrue* 2009 WL 3241758, *12 -13 (S. D. Tex. 2009)(slip op).

9

that border on personal attacks. For example, "[t]he distinguished jurist had a brief memory loss apparently." or "Common sense, a usual element at law . . . ." Docket 7, p. 15. These comments are totally inappropriate. Neither the ALJ nor the court are permitted to engage in creative theories about a medical condition based upon personal experience or the internet, nor may they extrapolate based upon their lay opinions of the effect of a symptom or a combination of symptoms, as counsel repeatedly urges. Such arguments are no more than frivolous; they not only waste counsel's and the court's time, but they also work a disservice when they plant unreasonable expectations in the mind of a claimant who cannot know otherwise. The court does not seek to discourage counsel from testing the boundaries of the law of social security, only to fend off arguments that are not reasonably supported by the facts of a given case or well-established social security law.

In this case, excluding plaintiff's counsel's arguments not directly related to the record, the ALJ's finding of plaintiff's RFC limited plaintiff to a range of sedentary work. This limitation clearly included the physicians' opinions as well as some of plaintiff's subjective complaints and impairments noted in his hearing testimony. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005) (The ALJ's finding that plaintiff was "limited to sedentary work [is] in itself a significant limitation, which reveals that the ALJ did give some credit to medical [the treating physician's] opinions."). The ALJ carefully considered plaintiff's gout, hypertension and headaches as well as his other claimed impairments in combination and found that he did not meet the stringent requirements of any Listing. The ALJ clearly understood that plaintiff's impairments could and do cause some work-related limitations. This recognition is reflected in his decision and in his RFC determination. The ALJ's decision is well reasoned. He cited

appropriately to the medical record and to plaintiff's testimony. He detailed the reasons for affording little weight to Dr. Glasgow's opinion, and the medical records and opinions in support of his RFC determination. *See Qualls v. Astrue* 2009 WL 2391402, 5 (5th Cir. 2009). The court holds that the ALJ's finding is supported by substantial evidence.

## Consideration of Combination of Impairments

Plaintiff argues that the ALJ did not consider all of plaintiff's impairments in combination with one another. For example, he argues that the ALJ overlooked plaintiffs allegations of blurred vision, depression and obesity and theorized that these complaints would aggravate plaintiff's gout, or the effects of the combination would cause additional absences from work. Docket 7, p. 14 - 15. The medical record contains no diagnosis of blurred vision, only plaintiff's complaints. Likewise, plaintiff offers no medical evidence to support diagnosis, treatment or actual impact of his depression, obesity or other impairments on his ability to work. The ALJ states that "[w]hile the record documents complaints of, or references to kidney problems, allergies, an overactive thyroid, hyperlipidemia, and depression, no functional limitations were established in conjunction with these conditions." Tr. 14. The plaintiff's argument that the ALJ failed to consider all of his impairments in combination must fail.

## CONCLUSION

After diligent review, the court holds that the ALJ's decision was supported by substantial evidence and therefore must be affirmed. A final judgment will issue this day.

THIS, the 16th day of August, 2010.

    /s/ S. Allan Alexander
    UNITED STATES MAGISTRATE JUDGE